# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**ANNA MAE TOFSRUD**                                                    **PLAINTIFF**

**VERSUS**                                          **CIVIL ACTION NO.: 1:08CV285-M-D**

**LOWNDES COUNTY, MISSISSIPPI**                                **DEFENDANT**

___

## ORDER
___

This cause comes before the court on the motion of defendant Lowndes County, Mississippi, seeking summary judgment pursuant to Fed. R. Civ. P. 56. Plaintiff Anna Mae Tofsrud has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that the motion is not well taken and should be denied.

This is a Title VII sex discrimination case arising out of plaintiff's February 2008 termination from her position at the Lowndes County Road Department's sign shop. Then a thirteen-year employee of the road department, Plaintiff was the sign shop's only employee, and defendant characterizes her dismissal as being incidental to its decision, based on budgetary concerns, to eliminate her position altogether. Plaintiff notes, however, that she was the road department's only (and first ever) female employee and that no other department employee had previously been terminated from, rather than transferred within, the department. Plaintiff has also presented evidence that Lowndes County Road Manager Ronnie Burns held considerable animosity towards her and had expressed a desire to see her removed from the department. On February 28, plaintiff delivered a letter to Lowndes County Administrator Ralph Billingsley and the Lowndes County Board of Supervisors expressing her belief that she had been terminated on the basis of her gender.

On February 29, 2008, plaintiff was offered a crew member's job in the road department, for less than she had been making at the sign shop. She declined the offer. The Board of Supervisors considered the issue of plaintiff's removal at a March 3, 2008 meeting, and defendant concedes that "[t]here was lengthy and heated debate about the decision" at the meeting. Two members of the board expressed support for plaintiff, and they abstained from the board's eventual 3-0 vote to spread the layoff decision on its minutes. In the weeks following her termination, the road department offered plaintiff additional positions as a truck driver and equipment operator, which offers she found unsatisfactory and declined for various reasons. Plaintiff initially scheduled, and then cancelled, an additional grievance hearing before the Board of Supervisors, before filing an EEOC complaint alleging that she was terminated on the basis of sex discrimination. Plaintiff filed the instant lawsuit on December 9, 2008, and defendant has presently moved for summary judgment, contending that there exists no genuine issue of fact regarding its potential liability in this case and that it is entitled to dismissal as a matter of law.

In the court's view, this case presents a rather classic example of a triable discrimination claim under the U.S. Supreme Court's decision in *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2101 (2000). *Reeves* established the principle that a "plaintiff's *prima facie* case of discrimination ... combined with sufficient evidence for a reasonable factfinder to reject the employer's nondiscriminatory explanation for its decision, may be adequate to sustain a finding of liability for intentional discrimination." It is clear that plaintiff is able to make the "very minimal"[1] evidentiary showing required to establish a *prima facie* case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817 (1973), inasmuch as she has presented proof that

---

[1] *See Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir. 1985).

she was qualified for her position and was treated differently from her male co-workers at the road department, who had always been transferred within the department, rather than being terminated.[2]

The summary judgment issues in this case turn largely upon the validity of the defendant's stated non-discriminatory reason for terminating plaintiff, namely that it made the decision to eliminate her position based on cost-cutting concerns. In the court's view, plaintiff has submitted proof which casts very considerable doubt upon whether this was the genuine reason for her termination. Plaintiff testified in her deposition that Road Manager Ronnie Burns had long treated her with hostility at the department, which plaintiff attributed to the fact that she was the sole female employee there. Plaintiff's testimony in this regard was buttressed by that of her former co-worker Johnny Kidd, who testified that Burns treated plaintiff with open hostility and that Burns had personally told him that he wished plaintiff would be fired. At his deposition, Kidd was unable to say whether plaintiff's gender was the reason for Burns' hostility towards her, but he did testify that plaintiff was a very good worker at the department. Before being transferred to the sign shop, plaintiff worked at various other positions in the department, and Kidd testified that she performed her duties there admirably:

> She worked hard. She worked right along ... if I got a shift she got one. If I got in a ditch she got in there. And she drove the truck. If I made a load she made one. So, you know, I really don't know what they fired her for.

Defendant does not dispute Kidd's assertion that plaintiff was a hard and diligent worker at the department.

Plaintiff's strongest evidence that defendant's stated reason for terminating her is pretextual is the deposition testimony of Howard Smart, who was a superintendent at the department when

---

[2]In addition, the same proof, discussed *infra*, which supports plaintiff's pretext arguments likewise assists her in meeting her *prima facie* case.

plaintiff worked there. Smart testified that both Burns and supervisor Harry Sanders wanted plaintiff fired and that Burns had personally told him that he wished to see plaintiff's sign shop position eliminated so that he could accomplish this:

> Q: And who wanted her gone other than Harry Sanders?
> Smart: Ronnie was one.
> Q: Ronnie Burns?
> Smart: Right. Harry.
> Q: Did you hear him say anything to this effect?
> Smart: Yes, he was superintendent and I was superintendent. He done mentioned it several times.
> Q: Okay. Tell me what he said.
> Smart: I want her out of there. We're going to do away with the sign shop. That way we can get her out of there.
> Q: So when they claim they eliminated the sign shop to save money, they really just eliminated the sign shop ...
> Smart: To get her out.

In the court's view, Smart's testimony, standing alone, is sufficient to establish triable jury issues regarding whether defendant's stated reason for terminating plaintiff is pretextual.

Plaintiff's claims of pretext are also strongly supported by the deposition testimony of manager Rocky Allen, who actually delivered the news of her termination, apparently with great reservations. Consistent with Smart's deposition testimony, Allen testified that Harry Sanders and Ronnie Burns both wanted to see plaintiff fired, and his testimony suggested that eliminating the sign shop was merely a pretext for accomplishing this:

> Q: Isn't it true that this Harry Sanders wanted her fired?
> Allen: Yes, sir.
> Q: Isn't it true that Ronnie Burns wanted her fired?
> Allen: Yes, sir.
> Q: And they told you they wanted her fired, right?
> Allen: Yes, sir.
> Q: And it had nothing to do with her job performance, did it?
> Allen: No, sir. . . .
> Q: That's why they fired her instead of transferring her to another position, isn't that correct?
> Allen: I was instructed to terminate her position.

4

> Q: Not to transfer her?
> Allen: Not to transfer her.

Plaintiff testified in her deposition that, when Allen told her that her position was being eliminated, he also told her that she had a good basis for a lawsuit. Allen did not appear to deny this assertion at his deposition:

> Q: Do you recall when you gave her the termination letter you told her that you have a good cause for a lawsuit?
> Allen: I do not remember that conversation.
> Q: Might you have said that and forgotten?
> Allen: I mean, anything is possible. But I do not recall that. ...
> Q: But you thought she was wrongfully terminated, didn't you?
> Allen: I thought she was done different than other employees.

Allen also testified that, after plaintiff filed a grievance, he was instructed to offer her a position paying four dollars an hour less than she had been making at the sign shop:

> Q: So why in the world would you offer a person who has had 13 years' experience and a good record and make her take a four dollar cut in pay when she has done nothing wrong?
> Allen: That's what I was instructed to do.

In addition to obtaining helpful testimony from former co-workers, plaintiff also received support from two members of the Lowndes County Board of Supervisors. Leroy Brooks, who has been a supervisor with Lowndes County for around 25 years, testified that he has never seen a male employee treated in the manner which plaintiff was treated. At the March 2008 board meeting, Brooks expressed support for plaintiff's contention that she had been discriminated against, stating that:

> You all know the problem, y'all all want to continue to harbor the problem . . . and it can be argued. That this, Anna Tofsrud was terminated because of her sex, which leaves the County in a very open position in terms of sex discrimination.

> Discrimination doesn't have to be intentional,[3] but the end results can be. The end results are the only female that works with the Road Department has been terminated . . . every male, black, white, green or yellow has been transferred.

Supervisor Jeff Smith, who worked for the Road Department for several years before becoming a supervisor, similarly testified that all the males prior to Tofsrud who had their jobs eliminated were allowed to transfer to other jobs without a loss of pay. In light of the evidence presented by plaintiff, there exists very considerable doubt regarding defendant's continued assertion that plaintiff was terminated based upon cost-cutting concerns. There is considerable evidence in the record suggesting that this is merely a pretext devised by Burns and/or Sanders, and defendant may well lose credibility with the jury if it continues to argue this position at trial.

The court notes, however, that plaintiff's case is not without its weaknesses. While plaintiff has very strong evidence of pretext in this case, it is less clear that sex discrimination, rather than some other factor such as political affiliation, was the primary cause for her termination. Indeed, both Allen and Smart testified in their depositions that county politics may have had a role in the animosity felt by Sanders and Burns towards plaintiff. While the details are not clear to this court, it appears from the record that plaintiff did not support Sanders in his political campaign and that this fact may have contributed to the animosity towards her. Plaintiff has asserted solely sex discrimination claims in this case, and, if the jury concludes that she was fired based on some reason other than sex, this fact may prove quite damaging to her lawsuit. Plaintiff may also see her damages sharply reduced if a jury concludes that she should have accepted some of the additional positions offered by the county following its initial "lowball" offer.

---

[3] The court would note that a Title VII disparate treatment lawsuit does, in fact, require a showing of intentional discrimination.

For summary judgment purposes, however, *Reeves* makes it abundantly clear that, by soundly refuting the non-discriminatory reason offered by defendant, plaintiff has earned the right to have a jury consider her claims. The Supreme Court noted in *Reeves* that there may be exceptional cases where it is clear, notwithstanding the apparent falsity of the defendant's stated non-discriminatory reason, that some reason other than discrimination was the true reason for a plaintiff's termination. This is clearly not such a case. Plaintiff has presented evidence that she was the only woman working on the county road department and that she was treated differently than male employees there. The court also notes that the 1991 Amendments to Title VII clearly permit plaintiff to exercise a mixed-motive option at trial, if she elects to do so. By demonstrating that sex discrimination was one motivating factor in her termination, plaintiff will be able to shift the burden to defendant to demonstrate that it would have taken the same employment action even absent discrimination. Even then, proof that discrimination was one motivating factor will entitle plaintiff to recover attorney's fees and other damages specified by statute. Plaintiff will need to decide how to best assert her claims at trial,[4] but it is clear at this juncture that she has earned the right to present her claims to a jury.

It is therefore ordered that defendant's motion for summary judgment is denied.

SO ORDERED, this the 18th day of February, 2010.

/s/ MICHAEL P. MILLS
**CHIEF JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI**

---

[4] Given the fact that both sides to this litigation face considerable risks at trial, it would appear that this case is ripe for settlement.